## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

**PAMELA BURNS, AS THE SURVIVING PARENT
OF PAULA SMITH, DECEASED, AND ALSO AS
REPRESENTITIVE OF THE HEIRS, MINOR
CHILDREN AND ESTATE OF PAULA SMITH,
DECEASED, AND/OR FOR THE USE AND
BENEFIT OF THE HEIRS, MINOR CHILDREN
OF PAULA SMITH, DECEASED; AND DELONDRE
HARRIS, INDIVIDUALLY, AND AS SURVIVING
FATHER/REPRESENTITIVE OFMINOR CHILD
OF PAULA SMITH, DECEASED,**

                        **Plaintiffs,**                      **No: 2:19-cv-02071**

**v.**

**TAURUS INTERNATIONAL MANUFACTURING,
INC., AND TAURUS HOLDINGS, INC.,**

                        **Defendants.**

---

## COMPLAINT

---

**COMES NOW,** Plaintiffs, Pamela Burns, as the surviving parent of Paula Smith, deceased, and also as representative of the heirs, minor children of Paula Smith, deceased, and/or for the use and benefit of the heirs, minor children of Paula Smith, deceased; and Delondre Harris, individually and, as the surviving parent and representative of the heir, minor child of Paula Smith, deceased, and respectfully submit their complaint in this cause, as follows:

### I.    PARTIES

1.    Plaintiff, Pamela Burns is a surviving parent of Paula Smith, who was pronounced dead on January 27, 2018 in Fayette County, Tennessee. Paula Smith was residing in

Fayette County, Tennessee, and was 24 years of age as of the date of her death. Pamela Burns brings this wrongful death action as the surviving parent of Paula Smith, deceased, and also a representative of the heirs, minor children and Estate of Paula Smith, deceased. Heirs of Paula Smith include her surviving parent, and descendant's minor children, John Doe 1, Jane Doe 1 and John Doe 2, all of whom reside in Fayette County, Tennessee.

2. Plaintiff, Delondre Harris brings this wrongful death action as representative of an heir of Paula Smith, deceased, minor child, John Doe 2 and as the father of said child and individually for his claim for negligent infliction of emotional distress. Delondre Harris is an adult and resides in Shelby County, Tennessee.

3. All heirs and survivors seek damages and loss of consortium for the wrongful death of Paula Smith, deceased.

4. Defendants, Taurus Manufacturing and Taurus Holdings are Florida corporations, operating and conducting business in Florida. Taurus Manufacturing and Taurus Holding's principal place of business is in Miami, Florida. Taurus Holdings is the one hundred percent stockholder of Taurus Manufacturing and they are both in the business of importing, manufacturing, testing, inspecting, marketing, selling, and distributing firearms. Taurus Defendants were responsible for manufacturing importing, testing, inspecting, marketing, selling, and distributing Plaintiff Delonde Harris' Taurus PT 145 Millennium Pro .45 caliber (Serial #NAU98280), which is the subject of this complaint.

5. Taurus Defendants are so intertwined contractually for each other's liabilities that they are essentially one entity with regard to the allegations in this Complaint.

Moreover, they are each included as either insureds or additional insureds on the same insurance policies that would provide coverage for the claims alleged in this Complaint.

6. Taurus International Manufacturing, Inc. (Taurus Manufacturing) is a corporation authorized and licensed in the state of Florida. Taurus Manufacturing's registered agent for service of process is Angelo & Banta, P.A. 515 East Las Olas Boulevard Ste. 850 Fort Lauderdale, FL 33301.

7. Taurus Holdings, Inc. is a corporation authorized and licensed in the state of Florida. Taurus Manufacturing's registered agent for service of process is Angelo & Banta, P.A. 515 East Las Olas Boulevard Ste. 850 Fort Lauderdale, FL 33301.


## II.    JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to the 28 U.S.C. § 1332(a) in that the amount in controversy exceeds $75,000.00 exclusive of interest and costs and diversity of citizenship exists between the named Plaintiffs and named Defendants. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

9. Diversity of citizenship exists in this case for purposes of subject matter jurisdiction, as the named Plaintiffs are citizens of Tennessee and none of the Taurus Defendants are citizens of Tennessee. Defendants Taurus International Manufacturing, Inc. ("Taurus Manufacturing") and Taurus Holdings, Inc. ("Taurus Holdings") are citizens of Florida as they are Florida corporations with their headquarters and/or principal places of business in Miami, Florida.

10. This Court has specific and general personal jurisdiction over Defendants pursuant to the Tennessee long-arm statute, Tennessee Code Annotated (T.C.A.) § 20-2-201. Defendants Taurus Manufacturing and Taurus Holdings have engaged in systematic and ongoing business transactions in the State of Tennessee and within this District. Defendants Taurus Manufacturing and Taurus Holdings have had continuous and substantial business connections in the State of Tennessee, including, upon information and belief, conducting business with individuals and businesses located in this District. Further, this Court has specific personal jurisdiction over Defendants because they have:

    a. operated, conducted, engaged in, or carried out a business venture in the State of Tennessee, including but not limited to, distributing pistols and other firearms in Tennessee and throughout the United States under the "Taurus" brand name, and receiving revenues from such importation and distribution of pistols and other firearms under the "Taurus" brand name, such that specific personal jurisdiction arises under T.C.A. § 20-2-201, et seq;

    b. committed various tortious acts within the State of Tennessee, including but not limited to, intentionally concealing the Safety Defects from Plaintiff, Delondre Harris, such that specific personal jurisdiction arises under T.C.A. § 20-2-201, et seq;

    c. caused injury to persons within the State of Tennessee while it was engaged in solicitation of service activities within the State of Tennessee, including but not limited to, injuries to Plaintiffs as stated

4

herein which were directly, proximately and foreseeably caused by the Safety Defects in this subject Pistol while Defendants solicited service activities within Tennessee, such that specific personal jurisdiction arises under T.C.A. § 20-2-201, et seq; and

d.  caused injury to persons within the State of Tennessee arising out of an act or omission by it outside of the State of Tennessee while products, materials, or things processed, serviced, or manufactured by it were used or consumed within the State of Tennessee in the ordinary course of commerce, trade, or use, including but not limited to, causing injuries to Plaintiffs arising out of the design, manufacture, distribution, and marketing of Pistols outside of Tennessee such that specific personal jurisdiction arises under T.C.A. § 20-2-201, et seq.

11.   Venue is proper in this court- as to Defendants Taurus Manufacturing and Taurus Holdings because they regularly and systematically conduct business in Fayette and Shelby Counties, Tennessee (which are in the Western District, Western Division), including but not limited to, the importation of firearms into Fayette and Shelby Counties, Tennessee, and distributing the subject Pistol in the Western District of Tennessee and other Taurus firearms throughout the United States under the "Taurus" brand name.

### III.  INTRODUCTION

12.   Paula Smith was killed when a Taurus PT 145 Millennium Pro .45 caliber semi-automatic pistol, bearing the serial number NAU98280 (the "Taurus Pistol" or "Pistol") unintentionally discharged due to Safety Defects which rendered it

unreasonably dangerous and unfit for its intended use. These Safety Defects include the "Drop-Fire Defect" and "False Safety Defect." The Drop-Fire Defect allows the trigger to move rearward when the pistol is subject to impact or dropped. The False Safety Defect allows a pistol to unintentionally fire even when the manual safety lever is in the "on" or "safe" position. The Safety Defects will result in the pistol firing unexpectedly and against the intentions of the pistol's handler.

13. In filing this lawsuit, Plaintiffs do not wish or intend to disparage the Second Amendment's right to bear arms. Rather, Plaintiffs seek to hold Taurus Defendants accountable for their actions in importing, marketing, distributing, failing to test and inspect the Pistol, and misrepresenting facts about the safety of the Pistol – which is defective and unreasonably dangerous as described in this Complaint.

14. The Pistol is defective and unreasonably dangerous because the Safety Defects will not prevent and did not prevent the unintended discharge of the Pistol – resulting in Paula Smith's death. The Safety Defects resulted from the inadequate design, manufacturing, and testing of the Pistol, and the continued failure of the Defendants to remedy the Safety Defects. The bottom line – a pistol should not fire when you don't pull the trigger and certainly should not fire when bumped off a bed as is the fact in this case.

15. Taurus Defendants had a duty to disclose and warn the purchasers of the Pistol truthfully and accurately, and not to conceal or misrepresent such truth, about the Safety Defects. Notwithstanding this duty, and in violation thereof, the Taurus Defendants carelessly and negligently failed to disclose to and warn the owner of the

gun, Delondre Harris, the truth about the Pistol and the Safety Defects that were inherent in the subject Pistol.

16.     Taurus Defendants fraudulently concealed and intentionally failed to warn the purchasers of their pistols, including Delondre Harris, of the Safety Defects with the intent to deceive about said Defects. Taurus Defendants falsely and fraudulently represented to the purchasers of the Pistol that it was safe for normal and intended use, when in fact the Pistol, Delondre Harris, was not safe for normal and intended use.

17.     Taurus Defendants conspired among themselves and with others to conceal from the public and the purchasers of the Taurus weapons the Safety Defects inherent in their weapons. Defendants' efforts to understate or misrepresent the nature of the risk created by the Defects allowed purchasers to falsely believe the weapons for their intended purpose.

18.     The Safety Defects are latent defects and the Pistol was defective in a way that would not be and was not apparent to Delondre Harris and the public.

## IV.     STATEMENT OF THE FACTS

A. *General Allegations*

19.     The Defendants designed, inspected, tested, developed, manufactured, marketed, advertised, distributed, and sold the subject pistol, a Taurus PT 145.45 caliber semi-automatic firearm, Serial Number NAU98280 (the "Pistol") that caused the death of Paula Smith.

20.     The Defendants caused the Pistol to be distributed and sold in various states within the United States, including the State of Tennessee, where Paula Smith resided.

21.     The Defendants expected the Pistol to reach its user, Delondre Harris, in substantially the same condition it was in when it was manufactured and when it left the custody and control of Defendants, or its agents and representatives.

B. *Background on the Safety Defects*

22.     The Defendants specifically designed and manufactured the subject PT 145 semi-automatic pistol as having multiple safety devices, including the following:

    a. The "Firing Pin Block" is designed to prevent the firing pin from going forward and striking the primer and is engaged until the trigger is in its final rearward position. Defendants also refer to the "Firing Pin Block" as the "Automatic Safety" or the "Automatic Firing Pin Block Safety." The Firing Pin Block, Automatic Safety, and Automatic Firing Pin Block Safety are referenced collectively throughout this Complaint as the "Firing Pin Block."

    b. The "Manual Safety Lever" is designed to, when switched in its upward position, and when the trigger is in its forward-most position, block the firing mechanism.

    c. The "Trigger Safety" is an internal mechanism designed to prevent the rearwards movement of the trigger, thereby preventing unintended discharge of the pistol.

23.     Delondre Harris purchased the Pistol from his father, Michael Alexander, on or about December 31, 2017 in Shelby County, Tennessee.  His father purchased the Pistol new from a retail seller in Shelby County, Tennessee.

24.     Delondre Harris purchased the pistol in reliance on the validity of the Pistol's safety devices.

25.     Michael Alexander purchased the Pistol and maintained it in a condition which was without substantial change from the condition it was in when it left the custody and control of the Defendants or their agents and representatives.

26.     Delondre Harris, when he purchased the Pistol from his father Michael Alexander, continued to maintain the Pistol in a condition which was without substantial change from the condition it was in when it left the custody and control of the Defendants, or their agents or representatives.

27.     The design of the Pistol as described herein is defective and as a result there is no effective safety device to prevent an unintended discharge, even when the Manual Safety lever is turned on and/or the trigger is inaccessible.

28.     Beginning in or about 2013, Defendants changed the design of their model PT 145 pistols to include a flanged or "blade-type" safety device on the trigger as a separate component of the weapon's trigger mechanism that moves independently of the primary trigger and is intended to prevent rearward movement of the trigger unless there is pressure on the face of the blade or flange from, for example, the shooter's finger. The subject pistol purchased by Delondre Harris, did not have this added safety feature.

### C.  *The Unintended Discharge*

29. On January 27, 2018, Paula Smith and Delondre Harris were enjoying their Saturday off together by relaxing at Paula Smith's house in Gallaway, Fayette County, Tennessee.  Later in the day, Delondre Harris decided he was going to leave the residence and go to the store to pick up a few items that were needed.  As was his normal practice and right, Delondre Harris retrieved his handgun (the subject Taurus Millennium .45 Pistol) to carry with him on his trip to the store.  Delondre Harris had a valid Tennessee "Handgun Carry Permit" which allowed him to legally carry a handgun on January 27, 2018.

30.     Although Delondre Harris was intent on going to the store before leaving, in a moment of spontaneity, he and Paula Smith started to become intimate, which lead to the couple

9

to Paula Smith's bed. Upon reaching the bed, Delondre Harris took off the subject Pistol and placed on the top of the foot of the bed.

31.     Delondre Harris and Paula Smith got onto the bed subsequently the Pistol was knocked or bumped off the bed.

32.     When the Pistol struck the floor, it discharged.

33.     The discharged round struck Paula Smith in the head, killing her.

34.     When the Pistol struck the floor on January 27, 2018, the manufactured safety devices failed, resulting in the unintended discharge of the Pistol, which killed Paula Smith.

### D. Tennessee Bureau of Investigation (T.B.I.)

35.     After the unintended discharge described herein that took place on January 27, 2018, Plaintiff, Delondre Harris, called "911" and reported the incident to law enforcement.

36.     In response to the aforementioned "911" call, Gallaway, Tennessee police and emergency personnel responded to investigate. Upon their arrival at Paula Smith's residence, they discovered Paula Smith's body and determined she had appeared to have died from a gunshot wound.

37.     Subsequently, members of the Tennessee Bureau of Investigation took over the investigation of the death of Paula Smith.

38.     The investigation, upon information and belief, included, but was not limited to, the following:

    a.     The detention and extensive questioning of Plaintiff, Delondre Harris;

    b.     Performing a gunpowder residue test on Delondre Harris to determine whether he had recently fired a weapon;

  c.  Extensive crime scene investigation and analysis, including trajectory of the unintended discharged round in relation to the wound trajectory in Paula Smith;

  d.  Findings of medical examiner; and

  e.  Extensive testing of the subject Pistol.

39. Upon completion of T.B.I.'s extensive investigation into the shooting death of Paula Smith, no criminal charges were brought against Delondre Harris.

40. Upon the completion of T.B.I.'s extensive investigation into the shooting death of Paula Smith, the Pistol was returned to Delondre Harris by the T.B.I. on or about January 11, 2019.

## V. CAUSES OF ACTION

### A. COUNT 1.

### STRICT LIABILITY — DESIGN DEFECT ALL DEFENDANTS

41. Plaintiffs restate all of the preceding allegations (¶ 1-40) as if fully restated herein.

42. Any distributor, importer, or seller in the chain of distribution is liable for injury caused by a defective product. Defendants were engaged in the business of designing, manufacturing, testing, inspecting, distributing and selling firearms, and did in fact, design, manufacture, test, inspect, distribute, sell and place into the stream of commerce the subject Pistol, knowing and expecting that the Pistol would be used by consumers and members of the public, such as Delondre Harris.

43. A product is defective because of a design defect if it is in a condition that is unreasonably dangerous to the user and the product is expected to and reaches the user without substantial change affecting that condition.

44. A product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary user would expect when used as intended or when used in a manner reasonably foreseeable by the Defendants, or alternatively, the risk of danger outweighs the benefits.

45. A product is defective if unreasonably dangerous even if the defendant has exercised all possible care in the preparation and sale of the product.

46. Defendants designed, tested, developed, manufactured, marketed, advertised, distributed, and sold the subject pistol in a defective condition that is unreasonably dangerous to the user who utilized it as Defendants expected it to be used and as it was handled by Delondre Harris, on January 27, 2018 when he merely placed it on the end of Paula Smith's bed and the Pistol accidentally fell to the floor.

47. Among the defects in the subject Pistol is its propensity to fire while safety devices are properly activated and engaged in accordance with the Defendants' instruction manual. The Pistol may discharge even when the Firing Pin Block, the Manual Safety Lever, and/or the Trigger Safety are all activated, and even when the trigger is not pulled, as was what occurred in this case.

48. Defendants knew, or in the exercise of reasonable care and investigation should have known, of the subject Pistol's propensity to unexpectedly discharge even when safety devices were activated and engaged.

49.    The subject Pistol is defective because of the design defect (i.e. the above described safety defects) and was in a condition that posed an unreasonable risk of injury to users and the public, including Delondre Harris and Paula Smith, when the Pistol was used as it was intended and as an ordinary user would expect, and therefore it is not safe or suitable for its intended purpose.

50.    Delondre Harris used the Pistol as it was intended to be used.

51.    Delondre Harris used the Pistol as an ordinary user would have expected it to be used.

52.    Delondre Harris used the subject Pistol in a reasonably foreseeable manner.

53.    The subject Pistol is defectively designed because the risks of danger inherent in the design outweigh the benefits.

54.    The subject Pistol was defective and unreasonably dangerous when it was sold by Defendants, and at the time it left Defendants' possession and control. The Pistol was expected and did reach Delondre Harris, without substantial change affecting its condition.

55.    Prior to January 27, 2018 neither Michael Alexander, Delondre Harris, or the deceased did not have any knowledge of the defective condition of the subject Pistol and did not have any reason to suspect that the Pistol was unreasonably dangerous prior to the unexpected discharge of the Pistol.

56.    The defective condition of the subject Pistol was the direct, proximate and foreseeable sole cause of Paula Smith's death.

57.    As a direct, proximate and foreseeable result of the Defendants' conduct described herein, Plaintiffs have suffered harm therefrom, including the wrongful

death of Paula Smith, pain and suffering, bills associated with the death of Paula Smith, funeral expenses, and all other damages allowable under the Tennessee Wrongful Death Statute. As a further direct, proximate and foreseeable result of the Defendants' conduct described herein, Pamela Burns and the children of Paula Smith claims all damages allowed by the Tennessee Wrongful Death Statute, including but not limited to monetary support, loss of consortium, loss of net accumulations, loss of past and future earnings, medical expenses, and funeral expenses.

58.    As a direct, proximate and foreseeable result of Defendants' conduct described herein, Plaintiff, Delondre Harris, suffered and continues to suffer severe emotional distress from witnessing the horrific death of Paula Smith as it there and then occurred.


## B.    COUNT 2.

## STRICT LIABILITY — MANUFACTURING DEFECT ALL DEFENDANTS

59.    Plaintiffs restate all of the preceding allegations (¶ 1-58) as if fully restated herein.

60.    Any distributor, importer, or seller in the chain of distribution is liable for injury caused by a defective product. Defendants were engaged in the business of designing, manufacturing, testing, inspecting, distributing and selling firearms, and did in fact, design, manufacture, test, inspect, distribute, sell and place into the stream of commerce the subject Pistol, knowing and expecting that the Pistol would be used by consumers and members of the public, such as Delondre Harris.

61. A product is unreasonably dangerous because of a manufacturing defect if the product is different from its intended design and fails to perform as safely as the intended design would have performed.

62. A product is defective because of a manufacturing defect if it is in a condition unreasonably dangerous to the user and the product is expected to and reaches the user without substantial change affecting that condition.

63. A product is defective if unreasonably dangerous even if the Defendant has exercised all possible care in the preparation and sale of the product.

64. Defendants designed, tested, developed, manufactured, marketed, advertised, distributed, and sold the subject Pistol in a defective condition that is unreasonably dangerous to the user who utilized it as Defendants expected it to be used and as it was used by Delondre Harris on January 27, 2018.

65. Among the defects in the subject Pistol is its propensity to fire while safety devices are properly activated and engaged in accordance with the Defendants' instruction manual. The Pistol may discharge even when the Firing Pin Block, the Manual Safety Lever, and/or the Trigger Safety are all activated, and even when the trigger is not pulled.

66. The subject Pistol is defective because of the manufacturing defect (i.e. the above described safety defects) as it was different from its intended design and failed to perform as safely as the intended design would have performed.

67. Because of this manufacturing defect (i.e. the above described safety defects) the subject Pistol was in a condition that posed an unreasonable risk of injury to users and the police, including Delondre Harris and Paula Smith, when the Pistol was used as it

was intended and as an ordinary user would expect, and therefore the Pistol is not safe or suitable for its intended purpose.

68.  Delondre Harris used the Pistol as it was intended to be used.

69.  Delondre Harris used the Pistol as an ordinary user would have expected it to be used.

70.  Delondre Harris used the subject Pistol in a reasonably foreseeable manner by merely placing it on the end of Paula Smith's bed.

71.  The subject Pistol was defective and unreasonably dangerous when it was sold by Defendants, and at the time it left Defendants' possession and control. The Pistol was expected and did reach Plaintiff Delondre Harris- without substantial change affecting this condition.

72.  Prior to January 27, 2018, neither Michael Alexander, Delondre Harris or Paula Smith did not have any knowledge of the defective condition of the subject Pistol, and did not have any reason to suspect that the Pistol was unreasonably dangerous or did not function according to its intended design prior to the unexpected discharge of the Pistol and had absolutely no idea that the weapon would discharge when dropped a short distance, as did occur in this case.

73.  The defective condition of the subject Pistol was the proximate, foreseeable, and sole cause of Paula Smith's death.

74.  As a direct, proximate and foreseeable result of the Defendants' conduct described herein, Plaintiffs have suffered harm therefrom, including mental pain and suffering, bills associated with the death of Paula Smith, funeral expenses, and all other damages allowable for Paula Smith's wrongful death. As a further direct,

proximate and foreseeable result of the Defendants' conduct described herein, the Plaintiffs claims all damages allowed by the Tennessee Wrongful Death Statute, including but not limited to monetary support, loss of net accumulations, loss of past and future earnings, medical expenses, and funeral expenses, and loss of consortium.

75.     As a direct, proximate and foreseeable result of Defendants, Plaintiff, Delondre Harris, suffered and continues to suffer severe emotional distress from witnessing the horrific death of Paula Smith as it there and then occurred.

## C.   COUNT 3.

## NEGLIGENCE OF ALL DEFENDANTS

76.     Plaintiffs restate all of the preceding allegations (¶ 1-75) as if fully restated herein.

77.     At all times material, Defendants owed a duty of reasonable care to Plaintiffs, and to other foreseeable users of the subject Pistol to design, equip, and manufacture the Pistol in a manner safe for its foreseeable users.

78.     Defendants negligently breached their duties of care to Plaintiffs, in one or more of the following ways:

        a.     Failing to properly design, equip, and manufacture the subject Pistol with safety devices which performed in accordance with the owners operator manual instructions and within the reasonable expectations of the ordinary user and consumer, including Delondre Harris;

        b.     Failing to properly design, equip, and manufacture the subject Pistol's safety devices and systems;

        c.     Designing and manufacturing a defective Firing Pin Block;

        d.     Designing and manufacturing a defective Manual Safety Lever;

e.  Designing and manufacturing a defective trigger;

f.  Designing and manufacturing a defective Trigger Safety;

g.  Designing and manufacturing defective safety devices and systems for the Pistol;

h.  Designing and manufacturing a pistol that would discharge without pulling the trigger;

i.  Designing and manufacturing a pistol that would discharge when the Manual Safety Lever is in the "ON" position;

j.  Failing to employ available, alternative designs which would have prevented the subject Pistol from discharging as it did and killing Paula Smith;

k.  Failing to use and apply good, safe, usual, prevailing, and reasonable engineering principles and standards in designing, equipping, manufacturing, marketing, and distributing the subject pistol;

l.  Failing to take adequate corrective action or preventative action;

m.  Failing to maintain proper records and data of incidents, complaints, malfunctions, inspections, and testing;

n.  Failing to create and provide clear operational and safety instructions, manuals, warnings, and literature;

o.  Failing to adequately design, manufacture, test, and monitor the subject model Pistol;

p.  Failing to warn and give sufficient notice to all purchasers and subsequent purchasers of the defective weapons of all of the above;

q.  Other acts of negligence to be determined through discovery.

79.  As a result of this breach of the Defendants' duty of care, the Pistol poses an unreasonable risk of injury to users when the Pistol is being used as it was intended

and as an ordinary user would expect and, therefore, it is not safe or suitable for its intended purpose.

80.    As a direct, proximate and foreseeable cause of Defendants' negligence, Paula Smith was killed.

81.    As a direct, proximate and foreseeable result of the Defendants' conduct described herein, Plaintiffs have suffered harm therefrom, including the wrongful death of Paula Smith, mental and emotion anguish, pain and suffering, bills associated with the death of Paula Smith, funeral expenses, and all other damages allowable as a result of Paula Smith's wrongful death. As a further direct, proximate and foreseeable result of the Defendants' conduct described herein, the Plaintiffs, as representatives of the beneficiaries of Paula Smith, claim all damages allowed by the Tennessee Wrongful Death Statue, including but not limited to monetary support, loss of net accumulations, loss of past and future earnings, medical expenses, and funeral expenses, and loss of consortium.

82.    As a direct, proximate and foreseeable result of Defendants, Plaintiff, Delondre Harris, suffered and continues to suffer severe emotional distress from witnessing the horrific death of Paula Smith as it there and then occurred.

### D.    COUNT 4.

### NEGLIGENT FAILURE TO WARN — ALL DEFENDANTS

83.    Plaintiffs restate all of the preceding allegations (¶ 1-82) as if fully restated herein.

84.    Reasonable care on the part of Defendants requires that Defendants give appropriate warnings about risks of the product which Defendants knew or should have known are involved in its reasonably foreseeable use.

85.    At all times material, Defendants had actual or constructive notice that the subject Pistol and others of that product line were defective in that the Pistol would unintentionally discharge despite having the safety features engaged, including the Firing Pin Block, Manual Safety Lever, and a Trigger Safety and, would unintentionally discharged when the trigger was not pulled.

86.    Defendants' knowledge of the defects in the Pistol was superior to that of the Plaintiffs', or other users, consumers, and purchasers.

87.    Defendants were or should have been aware of other instances where pistols of the same and similar design and model of the subject pistol had unintentionally discharged without the trigger being pulled.

88.    Delondre Harris and Paula Smith had no knowledge of any defective conditions with respect to the subject Pistol, its safety devices, or its propensity for unintentional discharged when dropped.

89.    At all times relevant, Delondre Harris operated the subject Pistol in a reasonable and foreseeable manner.

90.    Delondre Harris and Paula Smith had no reason whatsoever to know or suspect that the Pistol was unreasonably dangerous to him or to those in the immediate area of where the Pistol was located and that the Pistol could unintentionally discharge despite these safety devices being activated and despite when the Pistol was being used in its intended or reasonable manner.

91. Defendants owed a duty of reasonable care to Delondre Harris to warn him and others similarly situated of the above described dangerous and defective conditions. The failure to warn made the subject Pistol unreasonably dangerous to Delondre Harris and other users, consumers and purchasers.

92. The foreseeable risks of harm from this defect could have been reduced or avoided if the Defendants had provided reasonable instructions or warnings. The Defendants' failure to provide these instructions or warnings render the subject pistol defective and extremely dangerous, as is evident by Paula Smith's death.

93. Defendants did not give appropriate warnings to Delondre Harris of the subject Pistol's propensity to unintentionally discharge without pulling the trigger.

94. Defendants breached its duty of care to Delondre Harris by failing to warn Delondre Harris, and other users and consumers of the dangerous condition of the subject Pistol and pistols of the same model, design, and manufacture.

95. Defendants negligently failed to warn Delondre Harris that the subject Pistol could discharge without touching the trigger even with the Firing Pin Block engaged.

96. Defendants negligently failed to warn Delondre Harris that the subject Pistol could discharge without touching the trigger and even when the Manual Safety Lever engaged in the "ON" position.

97. Defendants negligently failed to warn Delondre Harris that the subject Pistol could discharge without touching the trigger even with the Trigger Safety incorporated into its design.

98.     Defendants failed to act reasonably and expeditiously to warn users, consumers or purchasers of the subject Pistol and users of the same and similarly defective models and designs of the potential danger created by the safety defect.

99.     Defendant failed to act reasonably and expeditiously to correct the safety defects in the Pistol's design and manufacture and to correct the dangerous condition of the subject Pistol.

100.    As a result of this failure to warn, the Pistol was defective, as it poses an unreasonable risk of injury or death to users or bystanders when the Pistol is being used as it was intended and as an ordinary user would expect, and therefore it is not safe or suitable for its intended purpose.

101.    As a direct, proximate and foreseeable cause of the Defendants' failure to warn Delondre Harris of the propensity of the subject Pistol to discharge without pulling the trigger, as described above, Paula Smith was killed.

102.    As a direct, proximate and foreseeable result of the Defendants' conduct described herein, Plaintiffs have suffered harm therefrom, including the wrongful death of Paula Smith, mental and emotional anguish, pain and suffering, bills associated with the death of Paula Smith, funeral expenses, and all other damages allowable as a result of the Tennessee Wrongful Death Statute. As a further direct, proximate and foreseeable result of the Defendants' conduct described herein, the Plaintiffs claim all damages allowed by the Tennessee Wrongful Death Statute, including but not limited to monetary support, loss of consortium, loss of net accumulations, loss of past and future earnings, medical expenses, and funeral expenses.

103. As a direct, proximate and foreseeable result of Defendants, Plaintiff, Delondre Harris, suffered and continues to suffer severe emotional distress from witnessing the horrific death of Paula Smith as it there and then occurred.

## E. COUNT 5.

## STRICT LIABILITY FAILURE TO WARN—ALL DEFENDANTS

104. Plaintiffs restate all of the preceding allegations as if fully restated herein.

105. A product is defective when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

106. A product is defective if it is unreasonably dangerous even if Defendants have exercised all possible care in the preparation and sale of the product and that product is then placed into the hands of consumers without appropriate warnings of its danger.

107. At all times material, Defendants had actual or constructive notice that the subject Pistol and others of that product line were defective in that the Pistol would unintentionally discharge without pulling the trigger, and would discharge despite having the safety features engaged, including the Firing Pin Block, Manual Safety Lever, and Trigger Safety.

108. Defendants were or should have been aware of other instances where pistols of the same and similar design and model of the subject pistol had unintentionally discharged without the trigger being pulled.

109.    Delondre Harris operated the subject Pistol in a reasonable and foreseeable manner.

110.    Neither Delondre Harris nor Paula Smith had any knowledge of any defective conditions with respect to the subject Pistol, its safety devices, or its propensity for unintentional discharging without pulling the trigger and/or discharging despite the activity safety mechanisms were supposedly activated or engaged.

111.    Delondre Harris and Paula Smith had no reason whatsoever to know or suspect that the Pistol was unreasonably dangerous to them and could unintentionally discharge without pulling the trigger and/or with the safety devices activated when the Pistol was being used in its intended, reasonable or foreseeable manner.

112.    The above-described safety defects were not well known to ordinary consumers or the public. Consumers relied on Defendants' representations, including those made in the pistol's owner's manual that the safety devices worked and would prevent the pistol from unintentionally discharging when the trigger was not pulled.

113.    The foreseeable risks of harm from this defect could have been reduced or avoided if the Defendants had provided reasonable instructions or warnings. The Defendants' failure to provide these instructions or warnings renders the subject pistol defective.

114.    Defendants did not give appropriate warnings to Delondre Harris of the subject Pistol's propensity to unintentionally discharge without pulling the trigger.

115.    Defendants failed to warn Delondre Harris and other users and consumers of the dangerous condition of the subject Pistol and pistols of the same model, design, and manufacture.

116. Defendants failed to warn Delondre Harris, that the subject Pistol could discharge without touching the trigger even with the Firing Pin Block engaged.

117. Defendants failed to warn Delondre Harris that the subject Pistol could discharge without touching the trigger even with the Manual Safety Lever engaged in the "ON" position.

118. Defendants failed to warn Delondre Harris, that the subject Pistol could discharge without touching the trigger even with the Trigger Safety incorporated into its design.

119. Defendants failed to warn users of the subject Pistol and users of the same and similarly defective models and designs of the potential danger created by the safety defect.

120. Defendant failed to correct the safety defects in the pistol's design and manufacture and to correct the dangerous condition of the subject Pistol.

121. As a result of this failure to warn, the Pistol was defective, as it poses an unreasonable risk of injury to users when the Pistol is being used as it was intended and as an ordinary user would expect, and therefore it is not safe or suitable for its intended purpose.

122. As a direct and proximate cause of the Defendants' failure to warn Delondre Harris of the propensity of the subject Pistol to discharge with the safety devices engaged, as described above, Paula Smith was killed.

123. As a direct and proximate result of the Defendants' conduct described herein, Plaintiffs have suffered harm therefrom, including mental pain and suffering, bills associated with the death of Paula Smith, funeral expenses, and all other damages allowable under Paula Smith's wrongful death. As a further direct and proximate

result of the Defendants' conduct described herein, the Plaintiffs claim all damages allowed by Paula Smith's wrongful death, including but not limited to monetary support, loss of net accumulations, loss of past and future earnings, medical expenses, funeral expenses and loss of consortium.

124.    As a direct, proximate and foreseeable result of Defendants' conduct described herein, Delondre Harris, suffered and continues to suffer severe emotional distress from witnessing the horrific death of Paula Smith as it there and then occurred.

## F.    COUNT 6.

## VICARIOUS LIABILITY

125.    Plaintiffs restate all of the preceding allegations as if fully restated herein.

126.    At all times material, Defendants were engaged in a joint venture, apparent agency, or alter ego relationship, and accordingly each Defendant is liable for the acts and omissions of the others.

127.    As such, Defendants are vicariously liable for the matters asserted in all Counts herein.

## G.    COUNT 7.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS- HARRIS

128.    Plaintiff, Delondre Harris restates all the preceding allegations (¶ 1-127) as if fully restated herein.

129.    At all material times herein, Defendants owed a duty of reasonable care to Plaintiff- Delondre Harris, and other foreseeable users of the subject Pistol to design,

equip, manufacture and test the pistol to insure that it operates in a safe manner for its intended purpose.

130.     Defendants violated this duty of care to Delondre Harris by allowing the subject Pistol to enter the stream of commerce and to be sold to consumers, including, Delondre Harris, when Defendants knew or should have known of the subject weapon's propensity to discharge without intentionally pulling the trigger and/or discharging when the weapon's heretofore safety measures were engaged.

131.     The violation of the duty of the care owed to Delondre Harris was the direct, proximate and foreseeable cause of the violent death of Paula Smith.

132.     At the time of Paula Smith's death, she and Delondre Harris had discussed getting married and moving in together so that they could jointly raise and care for their minor child, John Doe 2 and also raise and care for Paula Smith's other two (2) minor children John Doe 1, Jane Doe 1.

133.     Delondre Harris and Paula Smith had a close, intimate and loving relationship at the time of her death.

134.     The circumstances and manner of Paula Smith's death were horrific.

135.     Delondre Harris was right next to Paula Smith when the round of the subject Pistol impacted her head.  As a direct, proximate and foreseeable result of visualizing the immediate effects of Paula Smith's death,  Delondre Harris suffered immediate, substantial and severe emotional trauma which Delondre Harris continues to suffer presently and which Delondre Harris will continue to suffer in the future.

136. But for the negligent and gross negligence alleged herein, Paula Smith would not have died and Delondre Harris would not have had to endure witnessing her violent and horrific death.

## H.  COUNT 8.

## GROSS NEGLIGENCE AND RECKLESS CONDUCT

137. Plaintiffs restate all the preceding allegations (¶ 1-136) as if fully restated herein.

138. The acts, errors, omissions and violations of the duty of care owed to Plaintiffs by Defendants as set forth herein, amount to a reckless disregard for the health and safety of Paula Smith and Delondre Harris and other members of the public, justifying an award of punitive damages.

139. Specifically, Defendants knew or should have known that the subject Pistol was defective and such defect rendered it extremely dangerous to users and bystanders; Defendants were aware or should have been aware of other instances in which similar models of the subject Pistol unintentionally discharged, seriously wounding or killing other persons; despite Defendant's knowledge of the danger said weapon posed to Paula Smith, Delondre Harris and others similarly situated and, despite Defendants awareness of prior instances which similar models of the subject Pistol injured or killed people, Defendants allowed the weapons, including the subject weapon, to enter the stream of commerce which resulted in the subject weapon being ultimately purchased by Delondre Harris.  The outrageous and reckless conduct, acts, errors and omissions of Defendants' alleged herein were the direct, proximate and foreseeable cause of Paula Smith's death.  Such conduct cannot be tolerated by a civilized society

and, as such, punitive damages should be awarded to punish Defendants for said conduct and to deter future conduct of a similar nature.

## I. COUNT 9.

## COMBINED AND CONCURRING CONDUCT

140. The conduct of Taurus Defendants as described in this Complaint combined and concurred to cause Paula Smith's death.

## J. COUNT 10.

## ESTOPPEL AND TOLLING OF STATUTE OF LIMITATIONS

141. Taurus Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of fraudulent concealment, which include the Taurus Defendants' intentional concealment from Plaintiffs, and the general public that the pistols are defective, while continually marketing and distributing the pistols with the Drop-Fire Defect and failing to implement a recall of the pistols.

142. Given Taurus Defendants' affirmative actions of concealment by failing to disclose this known but non-public information about the Defect – information over which the Taurus Defendants had exclusive control – and because Delondre Harris could not reasonably have known that the Pistol was defective, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

## VI. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Pamela Burns, as surviving parent of Paula Smith, deceased, and also a representative of the heirs and Estate of Paula Smith, deceased, and/or for the use and benefit of the heirs and Estate of Paula Smith,

deceased; and Plaintiff, Delondre Harris, individually and as representative and father of minor child, John Doe 2, pray that:

a. Proper process issue and be served upon Defendants and that Defendants be required to appear and answer this Complaint within the time required by law;

b. Plaintiffs demand judgement against Defendants, Taurus International Manufacturing, Inc. and Taurus Holdings, Inc., individually, collectively and/or vicariously, for compensatory and wrongful death damages in the amount of $3,000,000 for the wrongful death of Paula Smith;

c. Judgment be awarded to Plaintiffs, against Defendants, for punitive damages as alleged herein to punish and deter Defendants and other businesses from creating similar dangerous conditions in an amount not less than six million dollars ($6,000,000.00) for the grossly negligent, reckless and careless conduct as set forth herein;

d. Judgment be awarded to Delondre Harris against Defendants to compensate him for Defendants' negligent infliction of emotional distress as set forth herein, in the amount of one million dollars ($1,000,000.00);

d. A jury be impaneled to hear this cause of action;

e. Plaintiffs be allowed to freely amend this Complaint upon the completion of the investigation/discovery aspects of the case; and

f. Such other and further relief, both general and specific, including, but not limited to, any discretionary costs as Plaintiffs may be entitled.

Respectfully submitted,

**MORTON & GERMANY, PLLC**

BY:     /s/ Craig V. Morton
        Craig V. Morton (TN# 14969)
        45 North B.B. King Blvd, Suite 201
        Memphis, Tennessee 38103
        Phone: (901) 522-0050
        Fax: (901) 522-0053
        craig@mortongermany.com